### B. E. ALLEN *vs.* MARY E. BLACK.

APRIL 19, 1956 (as of JANUARY 17, 1956).

PRESENT: Flynn, C. J., Condon and O'Connell, JJ.

CONDON, J. This is an action of assumpsit for the breach of a building contract. The case was tried to a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff in the sum of $1,485.95. The defendant excepted to such decision and to seven rulings on the admission of evidence. The case is here on her bill of exceptions containing those eight exceptions.

The defendant is the owner of a house on Balch street in the city of Providence. On March 26, 1952 she entered into a written contract with plaintiff for certain specified alterations and repairs to be made by him for $2,850. The

contract provided that this sum should be paid as follows: $850 "On Delivery of Material Permit Issued & Work is in Progress" and $850 "When Finished Plaster is on and All Rough Plumbing is Installed Balance when Complete." It also provided that work was to be commenced "within two weeks Apr. 10, 52." Although plaintiff was ready on that date, work was not commenced until approximately August 29, 1952 because of delay in the issuance of a building permit.

After the materials had been received and the work was in progress defendant paid plaintiff $850. Work was carried on until the last of October at which time all items specified in the contract except plastering the walls, rearranging the plumbing, cementing the cellar floor and building a canopy over the entrance door, were completed. The plaintiff testified that he was forced to stop further work at this point because defendant was going to install a heating system with the piping inside the partitions. Until that was done plaintiff claimed he could not plaster the walls. He testified that he asked defendant to get the heating work done so that he could finish his job and that she refused. She also refused to make the second payment of $850 unless he would cement the cellar floor.

The plaintiff testified that he told her this was the last work to be done but nevertheless he offered to do it out of order if she would pay him at least a "part" of the "plaster payment." She agreed and relying on such agreement plaintiff thereafter tore up the wooden flooring and graded the earth floor to prepare it for the cement. Then plaintiff informed defendant he would expect the payment agreed upon within two days. She refused to make any payment and, according to plaintiff, she told him to "Either put this cellar floor in or get off the job." Later in that week plaintiff abandoned the job.

It also appears from plaintiff's testimony that at the request of defendant he performed certain extra work for

which she had agreed to pay $275 in addition to the original contract price. The defendant denied that she entered into such an agreement. She also testified that several items of work specified in the written contract were not satisfactory; that other matters which she understood were included in the contract were not attended to at all; and that plaintiff tore down the chimney without her consent, as a result of which she was put to the expense of $250 to have it rebuilt on the outside of the house. However, she admitted on cross-examination that the only work she complained about to plaintiff was certain stair work.

The defendant presented two builders as expert witnesses to testify as to the character of the work which plaintiff had performed. They testified that several items were not done in a workmanlike manner. In rebuttal of such testimony plaintiff presented an architect who inspected the house and plaintiff's work thereon. He testified that considering the general plan of the house and the special nature of the remodeling and repairs called for by the contract the work was properly done. As to each item which defendant's experts had testified was of improper construction or was unworkmanlike, he testified positively to the contrary.

The trial justice expressed the opinion that the work which was done "was all right," and that the architect's testimony convinced him that the construction was proper. He was of the further opinion that the only question he had to decide was whether plaintiff or defendant breached the contract first. After weighing all the evidence, and particularly the testimony as to the date of the heating contract, he concluded that the scales tipped in favor of plaintiff's claim of justification for stopping work when he did and that defendant had breached the contract first.

Under her eighth exception defendant contends that the trial justice erred in reaching such decision. We have carefully read the transcript and we cannot agree with such

contention. There was a clear conflict in the evidence as to whether plaintiff had performed his work properly under the contract as far as he was permitted and also whether defendant had in fact prevented him from completing the entire contract. In evaluating such evidence the trial justice had the advantage of seeing the witnesses and noting their demeanor as they testified. Apparently he preferred to credit plaintiff and his witnesses rather than defendant and her witnesses. From our examination of the transcript it does not appear that he was clearly wrong in doing so, nor does it appear that he overlooked or misconceived any important testimony. Consequently there is no basis upon which we can disturb his decision either as to the liability or the damages.

We shall not discuss in detail defendant's first seven exceptions to the trial justice's rulings on the admission or exclusion of certain testimony since such detailed discussion would serve no useful purpose. Suffice it to say that we have carefully considered such exceptions and find no merit in any of them. In fact we are satisfied that each ruling was correct and in any event none, even if erroneous, could have prejudiced defendant to the extent of warranting a new trial. On the whole we think substantial justice has been done between the parties both by such rulings during the trial and by the decision.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

### ON MOTION FOR REARGUMENT.

#### JULY 27, 1956.

PER CURIAM. After our decision in the above case the defendant asked and received permission to file a motion for reargument. Pursuant to this permission she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument

of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

*Leonard Decof,* for plaintiff.

*Charles H. Drummey, Albert A. Nutini,* for defendant.